An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1094

Filed 1 October 2025

Forsyth County, No. 23CRS275569-330

STATE OF NORTH CAROLINA

      v.

DON WAYNE SAUNDERS, JR., Defendant.


Appeal by defendant from judgment entered 6 June 2024 by Judge Alyson A. Grine in Forsyth County Superior Court. Heard in the Court of Appeals 10 June 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Tanner J. Ray, for the State-appellee.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Callie S. Thomas, for defendant-appellant.*


GORE, Judge.

Defendant Don Wayne Saunders, Jr. appeals the judgment entered upon conviction of N.C.G.S. § 14-208.11(a)(4). Defendant was sentenced to an active term of 20 to 33 months' imprisonment. Upon review of the record and the briefs, we discern no error.

**I.**

Defendant was convicted twenty years ago in New York for a sexual offense. Defendant was required to register as a sex offender upon his release from prison and did so. Years later, defendant moved to Iredell County, North Carolina and later to Forsyth County. With each move, defendant followed the requirements of reporting his address as a sex offender and filling out the sex offender registration paperwork.

Defendant moved to Forsyth County to live with his mother in an apartment on Brandemere Lane. Although this apartment complex complied with the legal limitations for a sex offender's residence, the apartment management sent an eviction notice to defendant stating there was a policy against sex offenders living in the building. Defendant became homeless after other attempts to obtain housing. Defendant decided to live in his car in the parking lot of the apartment complex to care for his mother and daughter and prevent their eviction by management. According to defendant, the building management told him the parking lot address was 7000 Bethabara Parkway. Defendant entered this address into the change of address form at the sheriff's office and signed the Homeless Offender Agreement that listed the requirements, including weekly check ins at the sheriff's office to list his current address.

Defendant went to the sheriff's office weekly to report his address as 7000 Bethabara Parkway. Defendant wore an ankle monitor for GPS tracking. Defendant testified he visited the apartment often to assist his mother, who has medical issues, and to care for his own needs such as showering, laundry, cooking meals, using the

bathroom and charging his ankle monitor device. He also testified he would stay overnight in the apartment when his mother was ill, or it was too cold to sleep in his car.

The sheriff's office discovered a discrepancy on the GPS monitor between the address defendant gave in the address log, and the location where he was, at his mother's apartment. Notably, the address 7000 Bethabara Parkway does not exist. The closest corollary address is 7000 Bethabara Park Boulevard. Personnel at the sheriff's office recorded a conversation with defendant in which they explained his location did not match the address given, that the address does not exist, and that he must change the address to reflect the apartment address or move within two weeks.

Defendant did not update the address and continued to list the incorrect address. The GPS monitor continued to indicate defendant was located at his mother's apartment. After the allotted two weeks, Corporal Faircloth went to the apartment one morning and defendant answered the door. Corporal Faircloth testified defendant was in pajamas, appeared to have just woken up, had numerous clothing items and personal effects by a couch in the living room, had his phone plugged in charging, and was about to prepare breakfast. Defendant was arrested and charged with failure to register as a sex offender-falsification pursuant to N.C.G.S. § 14-208.11(a)(4).

Defendant's first trial took place in February 2024 but was declared a mistrial on account of a hung jury. The second trial took place in June 2024. During the

State's case, it sought and was granted admission of a map showing 7000 Bethabara Park Boulevard for illustrative purposes. This address was treated as defendant's address, because the address he listed does not exist. Defendant objected to the admission of this map on foundational grounds, stating the witness did not create the map. The trial court overruled the objection after determining the witness was familiar with the area and because the map was offered to illustrate the witness's testimony. Defendant moved to dismiss the indictment for insufficient evidence, but the trial court denied the motion. The jury ultimately returned a guilty verdict. A judgment was entered sentencing defendant to an active term of 20 to 33 months' imprisonment. Defendant timely appealed the judgment.

**II.**

Defendant appeals of right pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444. Defendant seeks review of two issues: (1) whether the trial court erred by denying his motion to dismiss for insufficient evidence; and (2) whether the trial court plainly erred by admitting the State's map of 7000 Bethabara Park Boulevard for illustrative purposes.

**A.**

Defendant argues the trial court erred by denying his motion to dismiss the charge for willfully providing the wrong address on the change of address form. We review a motion to dismiss for insufficient evidence de novo. *State v. Golder*, 374 N.C. 238, 250 (2020). To properly deny a motion to dismiss, the trial court must determine

"whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *Id.* at 249.

> Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion. The evidence must be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. In other words, if the record developed at trial contains substantial evidence whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*Id.* at 249–250 (cleaned up).

Defendant argues the State failed to submit sufficient evidence that he willfully and with the intent to deceive provided the wrong address on the address form for a homeless individual. We disagree.

Defendant was charged with violating N.C.G.S. § 14-208.11(a)(4) by registering an incorrect address in the address log for homeless persons in the Sex Offender Registry. An essential purpose behind the Sex Offender Registry is "to inform the public for its own safety." *State v. White*, 162 N.C. App. 183, 195 (2004). A defendant is charged with section 14-208.11(a)(4) of the Sex Offender Registry when he willfully "[f]orges or submits under false pretenses the information or verification notices required under th[e] Article." N.C.G.S. § 14-208.11(a)(4) (2023).

> The word willful, when used in a criminal statute, means something more than an intention to do a thing. Willfulness requires doing an act purposely and

deliberately in violation of law. Additionally, false pretense occurs when one makes an untrue representation to another that is calculated and intended to deceive.

*State v. Lamp*, 383 N.C. 562, 570–71 (2022) (cleaned up).

The State presented evidence that personnel at the sheriff's office met with defendant when he changed his registration status to homeless to explain the requirements for updating his address as a homeless offender. Defendant received a Homeless Offender Agreement that explained he must check in once every calendar week to provide the physical location where he sleeps at night and to notify the sheriff's office when he relocated. Defendant provided "7000 Bethabara Parkway" on his change of address form and continued to do so on the Homeless log. Corporal Faircloth discovered the address did not exist because there is no Bethabara Parkway. The only comparable address was 7000 Bethabara Park Boulevard and this address was not the location where defendant's GPS monitor indicated he was.

Defendant's location on the GPS monitor showed defendant was located at his mother's apartment. The sheriff's office met with defendant to explain his GPS monitor showed he was at his mother's apartment and not at 7000 Bethabara Park Boulevard and that he must update his address on the form or move. The sheriff's office explained in a recorded conversation that defendant had to put the address where he lived to comply with the law, even if it would get him in trouble with the apartment complex. The sheriff's office gave defendant two weeks to update his address "to give him as much time as possible to help him out." Defendant did not

update his address. Corporal Faircloth went to the apartment and found defendant. Corporal Faircloth observed defendant in pajamas, appearing like he had just woken up, and there were numerous clothing items, bags, and personal effects beside the couch inside the living room. His phone was plugged in charging, and he was preparing breakfast. This evidence taken together and viewed in the light most favorable to the State, is substantial evidence sufficient to overcome a motion to dismiss.

After all, the question is whether there is evidence to support the element of willfulness. In the present case, the sheriff's office provided defendant with the law, explained to defendant he was not complying with the law by putting the address of 7000 Bethabara Parkway, and communicated he needed to write in the apartment address if he was residing there. After this conversation, defendant made no changes, continued to put the same address, and the officer found defendant residing in the apartment at the address of 7014 Brandemere Lane. Therefore, the trial court did not err by denying the motion to dismiss.

**B.**

Next, defendant seeks plain error review for admission of the State's map, exhibit 14, as irrelevant evidence. When we review for plain error, we determine (1) whether "a fundamental error occurred," (2) whether "the error had a probable impact on the outcome," and (3) whether "the error is an exceptional case that warrants plain error review." *State v. Reber*, 386 N.C. 153, 158 (2024). This is an exacting test that

"requires a showing that the outcome is significantly more likely than not." *Id.* at 159. The question is "whether, absent that evidence, the jury probably would have returned a *different* verdict." *Id.* at 162.

Defendant argues that it was plain error for the trial court to admit the State's map showing 7000 Bethabara Park Boulevard because the map was irrelevant. We disagree.

The bar for admission of relevant evidence is low. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. In the present case, part of the State's legal theory was that 7000 Bethabara Park Boulevard was the address defendant meant to use because 7000 Bethabara Parkway does not exist. The officer testified to this fact, and the map provided an illustration of that address. The State sought to show that the address listed, was not the address where defendant was residing. Under plain error review, the exclusion of this map would not have had a probable impact on the jury's determination. This evidence was already in the record through the witness's testimony. Accordingly, defendant's plain error challenge is without merit.

**III.**

For the foregoing reasons, we discern no error. Therefore, the trial court did not err in denying defendant's motion to dismiss for insufficient evidence, nor did it

plainly err by allowing admission of the map illustrating 7000 Bethabara Park Boulevard.

NO ERROR.

Judges STROUD and HAMPSON concur.

Report per Rule 30(e).